UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

JONATHAN E. PERLMAN,
Court-Appointed Receiver in *Federal Trade Commission and State of Florida v. 321 Loans, Jeremy Marcus, et al.*, Case No. 17-60907-CIV-MORENO,

      Plaintiff,

v.

BARCLAYS BANK PLC, and
BARCLAYS BANK DELAWARE,

      Defendants.
_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Jonathan E. Perlman, the court-appointed Receiver ("Receiver") of the Receivership Entities,[1] sues Barclays Bank PLC and Barclays Bank Delaware (collectively, "Barclays" or the "Defendants") and alleges:

---

[1] Receivership Entities are Financial Freedom National, Inc. f/k/a Institute for Financial Freedom, Inc. and Marine Career Institute Sea Frontiers, Inc. d/b/a 321 Loans, Instahelp America, Inc., Helping America Group, United Financial Support, Breeze Financial Solutions, 321Financial Education, Credit Health Plan, Credit Specialists of America, American Advocacy Alliance, and Associated Administrative Services, 321Loans, Inc., f/k/a 321 Loans, Inc. d/b/a 321Financial, Inc., Instahelp America, Inc. f/k/a Helping America Team, Inc. d/b/a Helping America Group, Breeze Financial Solutions, Inc. d/b/a Credit Health Plan and Credit Maximizing Program, US Legal Club, LLC, Active Debt Solutions, LLC f/k/a Active Debt Solutions, Inc. d/b/a Guardian Legal Center, Guardian LG, LLC d/b/a Guardian Legal Group, American Credit Security, LLC f/k/a America Credit Shield, LLC, Paralegal Support Group LLC f/k/a Paralegal Support LLC, Associated Administrative Services, LLC d/b/a Jobfax, Cockburn & Associate LLC, JLMJP Pompano, LLC, Halfpay International, LLC, Halfpay NV, LLC, HP Properties Group, Inc., HP Media, Inc., Omni Management Partners, LLC, Nantucket Cove of Illinois, LLC, Discount Marketing USA, S.A., Viking Management Services, LLC, White Light Media LLC, Blue42, LLC, National Arms, LLC, and 110 Glouchester St., LLC, and their divisions, subsidiaries, affiliates, predecessors, successors, and assigns.

1

## PARTIES, JURISDICTION AND VENUE

1. The Receiver was appointed Permanent Receiver of the Receivership Entities by the United States District Court for the Southern District of Florida in an Order dated May 17, 2017 (the "Receivership Order") in the action styled *Federal Trade Commission, et al. v. Jeremy Lee Marcus, et al.*, Case No. 17-60907-CIV-MORENO (the "Enforcement Case").

2. The Receivership Order authorizes and directs the Receiver to "institute…such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership [Entities] or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under [the] Order."

3. This Court has jurisdiction over each of the Defendants under 28 U.S.C. §§754 and 1692 and has subject matter jurisdiction over this matter under 28 U.S.C. §§754, 1367 and 1692. Venue is proper in this Court.

## FACTS COMMON TO ALL COUNTS

4. On May 8, 2017, the Federal Trade Commission ("FTC") and the Office of the Attorney General, State of Florida, Department of Legal Affairs ("State of Florida") filed the Enforcement Case, alleging that Jeremy Lee Marcus ("Marcus") and others engaged in a scheme to bilk consumers of millions of dollars through phony loans and debt-relief services in violation of state and federal law.

5. On May 9, 2017, the judge in the Enforcement Case entered a preliminary injunction appointing the Receiver as Temporary Receiver over eleven originally-named Receivership Entities (the "Receivership Defendants"). After an evidentiary hearing, the judge in the Enforcement Case found that the FTC and State of Florida had established a substantial likelihood of success on the merits and, on May 17, 2017, appointed the Receiver as Permanent

Receiver over the Receivership Defendants and "their affiliates, subsidiaries, divisions, or sales or customer service operations, wherever located, with the full power of an equity receiver."

6. Upon being appointed, the Receiver, through his professionals, conducted an investigation of the Receivership Defendants' businesses and affairs. He secured the Receivership Defendants' physical offices and information systems (e-mail, file storage, telephone, and accounting), interviewed and deposed Marcus, interviewed dozens of the Receivership Defendants' employees, vendors, and outside professionals, and conducted a forensic accounting of the Receivership Defendants' businesses and assets.

7. The Receiver's investigation confirmed that material allegations of the FTC and State of Florida against Marcus and his cohorts were correct.

8. The Judge presiding over the Enforcement Case entered orders on July 31, 2017, March 16, 2018, and August 24, 2018, expanding the Receivership Order to include all of the Receivership Entities.

9. In April 2018, Marcus stipulated to entry of a permanent injunction barring him from engaging in telemarketing or providing debt relief/credit repair or financial services or products, and Marcus stipulated to entry of a monetary judgment against him in the amount of $85,326,648.45. In addition, a final default judgment totaling $85,663,556.61 was entered in the Enforcement Case against certain of the Receivership Entities, including those that made transfers to the Defendants.

**The Underlying Scheme**

10. Between 2013 and May 2017, Marcus orchestrated a phony debt relief scheme that extracted more than $85 million from thousands of consumers using 142 internet domain names and 440 direct-dial phone numbers.

11. Through a nationwide enterprise of 85 entities, Marcus employed telemarketers to misrepresent to consumers that the touted debt relief service would provide low-interest loans to pay off consumers' debt, sometimes falsely claiming that such low rates were available because the Receivership Entities were non-profit companies. Many consumers stated that the claimed non-profit status bolstered the scheme's credibility and made it seem legitimate; in reality, all of the entities involved in the scheme acted for-profit.

12. Consumers were also falsely told that their unsecured debts would be settled, or payment terms modified to reduce balances, interest rates, or fees. Consumers made an immediate payment, in violation of the federal Telemarketing and Consumer Fraud and Abuse Prevention Act and Telemarketing Sales Rule, plus additional monthly payments in amounts ranging from $200 to $1,000 or more, primarily through automated ACH debits from consumers' checking accounts. Consumers believed this money was and would be used to resolve their debts.

13. In reality, consumers did not receive any loans to pay off unsecured debts; nor were consumer debts typically negotiated, settled, or resolved, despite the monthly payments being taken from consumers' checking accounts.

14. Many consumers had worked for years with prior debt-relief providers and saved thousands of dollars in escrow accounts to negotiate with their unsecured creditors before falling victim to Marcus' scheme. Many of these consumers were falsely told that they were taking over servicing of the consumer's pre-existing debt relief accounts. Marcus misappropriated those funds for personal use, including buying a $5 million waterfront home with a 100-foot dock located on Las Olas Boulevard in Ft. Lauderdale.

15. Consumers paid millions of dollars and received little, if anything, in return. Consumers did not receive debt consolidation loans. Consumers generally did not get their debts

paid, settled, or resolved, and they did not see their credit improved. Instead, consumers were left in worse financial positions, some of whom were already in financial distress, elderly or disabled. Some consumers were ultimately sued by their creditors, and even forced into bankruptcy. The losses suffered by consumers exceed $85 million.

16. Marcus often used funds misappropriated from one Receivership Entity to pay operating expenses of another Receivership Entity, including through the Barclays Transfers (as defined later), to maintain the façade of the debt relief business.

## Marcus' Use of the Barclay's Card for Personal Benefit

17. When questioned under oath about the foregoing facts, Marcus refuted none of them and instead invoked his Fifth Amendment privilege against self-incrimination. Before "taking the Fifth," however, Marcus admitted in interviews with the Receiver that he used consumers' funds to acquire property for his own personal benefit and support his lavish lifestyle.

18. At all material times through commencement of the Enforcement Action, Marcus had a personal Barclaycard Arrival Plus World Elite MasterCard credit card (Account Numbers ending in 1424, 8246, 9065, 7940, & 0231, among others) (the "Personal Master Cards").[2]

19. Prior to the commencement of the Enforcement Action, Marcus, utilizing misappropriated Receivership Entities' monies (consumer funds) and certain of the Receivership Entities, namely, (1) Nantucket Cove of Illinois, LLC, (2) Helping America Group, Inc, and (3) Associated Administrative Services, LLC, made transfers to Barclays for certain personal charges of Marcus, including travel and luxury goods (collectively, the "Barclays Transfers").

---

[2] Prior to filing suit, the Receiver served Barclays with subpoenas requesting records relating to Marcus' use of his credit cards. In response, Barclays produced certain documents that were redacted. As such, the Receiver reserves his right, if appropriate, after discovery to amend these claims to assert claims for additional accounts.

5

20. As admitted by Marcus, millions of dollars consumers paid to obtain debt relief services were improperly diverted by Marcus for unrelated personal expenses. Specifically, for example, certain of the Barclay Transfers paid for the following: $1,217.07 for a cruise on the Caribbean Princess; $3,710.00 spent at Louis Vuitton; $5,045.60 on jewelry at David Yurman; $8,570.00 for cord blood banking; $7,910.36 for modern furniture from Modani Miami; $16,497.65 to Sklar Furnishings; and $20,670 to Accent Closets, Inc. for custom closets  All of these represent improper diversions of consumer funds that provided no benefit or value to the Receivership Entities.

21. Ultimately, Marcus made the Barclay Transfers to Barclay using funds misappropriated from the Receivership Entities. For years, the Defendants received hundreds of thousands of dollars on Marcus' personal accounts as direct or subsequent transferees from the corporate Receivership Entities, some of which purported to be not-for-profit.

## **Avoidance and Recovery of Fraudulent Transfers**
## **Pursuant to Chapter 726 of The Florida Statutes**

22. The Receiver re-alleges paragraphs 1 through 21 as if fully set forth herein.

23. This is an action under the Florida Uniform Fraudulent Transfer Act, Chapter 726 of the Florida Statutes ("FUFTA") to avoid and recover fraudulent transfers (the "Barclays Transfers") made from the Receivership Entities to Barclays.

24. At all material times through commencement of the Enforcement Action, Marcus used the Personal Master Card.

25. Throughout this time period, certain of the Receivership Entities, namely: (1) Nantucket Cove of Illinois LLC, (2) Helping America Group Inc., and (3) Associated Administrative Services, LLC, made Barclays Transfers to pay for certain personal charges of Marcus, including travel and luxury goods. Additionally Marcus wrongfully misappropriated

6

funds from the Receivership Entities, which was subsequently transferred to Barclays. The total amount of the Barclays Transfers is $353,133.75, and was in furtherance of the scheme and Marcus' diversion of assets from the Receivership Entities, as reflected in more detail on the schedule attached hereto as Exhibit "A" and summarized as follows:

| Transferor | Account Number | Amount of Transfer |
|---|---|---|
| Jeremy L Marcus | SUN 2748 | $ 6,500.00 |
| Nantucket Cove of Illinois LLC | ST 1344 | $ 1,778.81 |
| Jeremy L Marcus | SUN 2748 | $ 427.00 |
| Helping America Group Inc. | ST 6640 | $ 4,337.99 |
| Jeremy L Marcus | SUN 2748 | $ 865.00 |
| Jeremy L Marcus | SUN 2748 | $ 1,835.83 |
| Nantucket Cove of Illinois LLC | ST 1344 | $ 1,227.56 |
| Jeremy L Marcus | CNB-9738 | $ 4,993.49 |
| Jeremy L Marcus | CNB-9738 | $ 2,778.53 |
| Jeremy L Marcus | CNB-9738 | $ 12,198.72 |
| Jeremy L Marcus | CNB-9738 | $ 7,945.84 |
| Jeremy L Marcus | CNB-9738 | $ 175.47 |
| Nantucket Cove of Illinois LLC | CNB 9699 | $ 2,007.94 |
| Jeremy L Marcus | CNB-9738 | $ 6,198.48 |
| Jeremy L Marcus | CNB-9738 | $ 6,198.48 |
| Jeremy L Marcus | CNB-9738 | $ 4,332.87 |
| Jeremy L Marcus | CNB-9738 | $ 1,422.04 |
| Jeremy L Marcus | CNB-9738 | $ 1,216.58 |
| Nantucket Cove of Illinois LLC | CNB 9699 | $ 1,103.00 |
| Jeremy L Marcus | CNB-9738 | $ 1,422.04 |
| Associated Administrative Services, LLC | CNB 9819 | $ 2,197.40 |
| Associated Administrative Services, LLC | CNB 9819 | $ 2,000.00 |
| Jeremy L Marcus | CNB-9738 | $ 4,269.78 |
| Jeremy L Marcus | CNB-9738 | $ 4,269.78 |
| Nantucket Cove of Illinois LLC | CNB 9699 | $ 3,352.01 |
| Associated Administrative Services, LLC | CNB 9819 | $ 1,600.00 |
| Jeremy L Marcus | CNB-9738 | $ 1,903.57 |
| Jeremy L Marcus | CNB-9738 | $ 1,903.57 |
| Jeremy L Marcus | CNB-9738 | $ 3,000.00 |
| Jeremy L Marcus | CIT-8802 | $ 21,214.27 |
| Jeremy L Marcus | CIT-8802 | $ 500.00 |

| | | | |
|---|---|---|---:|
| Jeremy L Marcus | CIT-8802 | $ | 16,000.00 |
| Jeremy L Marcus | CIT-8802 | $ | 69.77 |
| Jeremy L Marcus | CIT-8802 | $ | 17,668.90 |
| Jeremy L Marcus | CIT-8802 | $ | 20,670.00 |
| Jeremy L Marcus | CIT-8802 | $ | 1,095.00 |
| Nantucket Cove of Illinois LLC | Mid 1929 | $ | 6,144.56 |
| Jeremy L Marcus | CIT-8802 | $ | 16,535.80 |
| Jeremy L Marcus | CIT-8802 | $ | 5,960.92 |
| Jeremy L Marcus | CIT-8802 | $ | 13,827.88 |
| Jeremy L Marcus | CIT-8802 | $ | 8,779.75 |
| Jeremy L Marcus | CIT-8802 | $ | 5,960.92 |
| Jeremy L Marcus | CIT-8802 | $ | 17,986.58 |
| Jeremy L Marcus | CIT-8802 | $ | 629.69 |
| Jeremy L Marcus | CIT-8802 | $ | 4,355.93 |
| Jeremy L Marcus | CIT-8802 | $ | 26,580.59 |
| Jeremy L Marcus | CIT-8802 | $ | 569.50 |
| Jeremy L Marcus | CIT-8802 | $ | 24,097.30 |
| Jeremy L Marcus | CIT-8802 | $ | 4,511.37 |
| Jeremy L Marcus | CIT-8802 | $ | 364.68 |
| Nantucket Cove of Illinois LLC | Mid 1929 | $ | 3,621.10 |
| Jeremy L Marcus | CIT-8902 | $ | 11,791.11 |
| Jeremy L Marcus | CIT-8802 | $ | 7,383.00 |
| Jeremy L Marcus | CIT-8802 | $ | 15,762.90 |
| Jeremy L Marcus | CIT-8802 | $ | 6,863.00 |
| Jeremy L Marcus | CIT-8802 | $ | 727.45 |
| | **Total** | **$** | **353,133.75** |

26. Throughout the same time-period, as part of the Marcus fraudulent scheme, certain Receivership Entities received funds originating with consumers who paid over such funds in exchange for promised services. By accepting those funds, those Receivership Entities became obligated to provide such services to the consumers or to return the funds to the consumers.

27. As part of the Marcus fraudulent scheme, Marcus engineered many transfers of cash among and between the Receivership Entities (the "Inter-Entity Transfers"), all without consideration, as part of Marcus' operations of the Receivership Entities. Each of the Inter-Entity Transfers created a debt from the Receivership Entity receiving the funds to the Receivership

Entity providing the funds.

28. All of the Inter-Entity Transfers were made without consideration and with the fraudulent intent to use the paying-Receivership Entity's funds as part of a fraudulent scheme and not for the benefit of the paying-Receivership Entity or to repay obligations to other Receivership Entities or consumers.

29. The Inter-Entity Transfers also made it impossible for Receivership Entities to perform the services they were obligated to provide to consumers, creating liabilities for those Receivership Entities.

30. Specifically, the Inter-Entity Transfers occurred among and between the various Receivership Entities and resulted in certain Receivership Entities ("Creditor Entities") being creditors of other Receivership Entities ("Debtor Entities"), including the Debtor Entities that made the Barclays Transfers.

31. For example, Receivership Entity, Nantucket Cove of Illinois, LLC is a creditor of Receivership entity Halfpay International, LLC by virtue of Halfpay International, LLC's 2015 payment in the amount of $2,052,055.31 for a 135 lot residential community in Beecher, Illinois on behalf of Nantucket Cove of Illinois, LLC.

32. The Inter-Entity Transfers engineered by Marcus were made between the Receivership Entities as part of the multi-faceted fraudulent business scheme engineered by Marcus.

33. When any Receivership Entity transferred funds to another Receivership Entity, the Creditor Entity was entitled to an accounting and return of the funds, with interest. However the funds were not returned, but were instead diverted and misused by Marcus through the Receivership Entities that received the Inter-Entity Transfers in connection with Marcus's

fraudulent scheme.

34. The Creditor Entities have claims against the Debtor Entities for repayment of the funds comprising the Inter-Entity Transfers. Thus, the Receiver, standing in the shoes of the Creditor Entities, is a "creditor" as defined by FUFTA of the Debtor Entities that made the Barclays Transfers. Conversely, the Debtor Entities that made the Barclays Transfers were "debtors" with respect to the Creditor Entities as defined by FUFTA.

35. Additionally, Marcus misappropriated and misdirected funds from the Receivership Entities, including by making Barclays Transfers. The Receivership Entities were required to use funds received from consumers to provide debt-relief services as promised to consumers.

36. Marcus also commingled funds from the different Receivership Entities and used the commingled funds for personal gain (i.e., to purchase expensive luxury items and travel for himself, relatives, and insiders). The Barclays Transfers for Marcus' personal expenses provided no benefit to the Receivership Entities.

37. Each time Marcus engineered a Barclays Transfer or other transfer of Receivership Entity assets for an unauthorized purpose, he harmed the Receivership Entity that owned the transferred funds by converting and transferring assets rightfully belonging to the Receivership Entity in breach of Marcus' fiduciary duties. With each such transfer, the Receivership Entity that owned the transferred funds obtained a "claim" against Marcus, because a "claim" under FUFTA is "any right to payment," including a contingent, legal, or equitable right to payment. As such, the Receiver, standing in the shoes of the Receivership Entity that owned the transferred funds, is a "creditor" of Marcus as defined by FUFTA, and is entitled to recover any transfer of assets controlled by Marcus which could have been applied to satisfy the Receivership Entity-transferor's

claim, including the very funds being transferred, *i.e.*, the Barclays Transfers.

38.     Further, each Barclays Transfer reduced the funds available to satisfy claims against the Receivership Entity that owned the transferred funds, which hindered and delayed that Receivership Entity's ability to satisfy their creditors.

39.     Each Barclays Transfer also harmed defrauded consumers, who held tort claims against the Receivership Entities as a result of the scheme, which claims could have been satisfied from the assets of the Receivership Entity that owned the transferred funds had those assets not been transferred through the Barclays Transfers. Thus, the Barclays Transfers reduced the assets available to satisfy defrauded consumers and thereby hindered and delayed consumers' ability to satisfy their tort claims.

40.     Under FUFTA, the Receiver, standing in the shoes of the Creditor Entities and/or the Receivership Entity that owned the transferred funds, may avoid the Barclays Transfers as fraudulent transfers and recover their value from Barclays because:

(A)     the Barclays Transfers were made in the furtherance of a fraudulent scheme or otherwise with actual intent to hinder, delay, or defraud existing or future creditors, including other Receivership Entities and consumers ; or

(B)     the Receivership Entities received less than a reasonably equivalent value in exchange for the transfers; and (i) were insolvent on the date that the transfers were made or became insolvent as a result of such transfers; or (ii) were engaged in business or a transaction, or were about to engage in business or a transaction, for which their remaining assets were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

WHEREFORE, the Receiver demands judgment against Barclays: (i) avoiding the Barclays Transfers to Barclays and recovering the amount of those transfers from Barclays; (ii) pre-judgment and post-judgment interest as allowed by law; and (iii) such other and further legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Receiver demands a trial by jury as to all facts, issues, and claims that are so triable.

DATED this 17th day of January 2020.

> GENOVESE JOBLOVE & BATTISTA, P.A.
> *Attorneys for Jonathan E. Perlman, Receiver*
> 100 Southeast 2nd Street, Suite 4400
> Miami, Florida 33131
> Telephone: (305) 349-2300
> Facsimile: (305) 349-2310
>
> By: */s/ Eric D. Jacobs*
> Heather Harmon, Esq., FBN 13192
> hharmon@gjb-law.com
> Eric D. Jacobs, Esq., FBN 85992
> ejacobs@gjb-law.com
> Gregory M. Garno, Esq., FBN 87505
> ggarno@gjb-law.com

10675-624/3125083/1

# EXHIBIT A

| Transferee | Transferor | Bank Account | Statement Clearing Date | Amount of Transfer |
|---|---|---|---|---|
| Barclays Bank PLC | Jeremy L Marcus | SUN 2748 | 01/15/2016 | $ 6,500.00 |
| Barclays Bank PLC | Nantucket Cove of Illinois LLC | ST 1344 | 01/19/2016 | $ 1,778.81 |
| Barclays Bank PLC | Jeremy L Marcus | SUN 2748 | 01/20/2016 | $ 427.00 |
| Barclays Bank PLC | Helping America Group Inc. | ST 6640 | 01/20/2016 | $ 4,337.99 |
| Barclays Bank PLC | Jeremy L Marcus | SUN 2748 | 01/27/2016 | $ 865.00 |
| Barclays Bank PLC | Jeremy L Marcus | SUN 2748 | 02/01/2016 | $ 1,835.83 |
| Barclays Bank PLC | Nantucket Cove of Illinois LLC | ST 1344 | 02/05/2016 | $ 1,227.56 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 03/04/2016 | $ 4,993.49 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 03/17/2016 | $ 2,778.53 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 03/29/2016 | $ 12,198.72 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 04/15/2016 | $ 7,945.84 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 05/19/2016 | $ 175.47 |
| Barclays Bank PLC | Nantucket Cove of Illinois LLC | CNB 9699 | 05/23/2016 | $ 2,007.94 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 05/24/2016 | $ 6,198.48 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 06/09/2016 | $ 6,198.48 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 06/20/2016 | $ 4,332.87 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 06/24/2016 | $ 1,422.04 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 07/01/2016 | $ 1,216.58 |
| Barclays Bank PLC | Nantucket Cove of Illinois LLC | CNB 9699 | 07/07/2016 | $ 1,103.00 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 07/18/2016 | $ 1,422.04 |
| Barclays Bank PLC | Associated Administrative Services, LLC | CNB 9819 | 07/19/2016 | $ 2,197.40 |
| Barclays Bank PLC | Associated Administrative Services, LLC | CNB 9819 | 08/08/2016 | $ 2,000.00 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 08/09/2016 | $ 4,269.78 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 08/09/2016 | $ 4,269.78 |
| Barclays Bank PLC | Nantucket Cove of Illinois LLC | CNB 9699 | 08/16/2016 | $ 3,352.01 |
| Barclays Bank PLC | Associated Administrative Services, LLC | CNB 9819 | 09/08/2016 | $ 1,600.00 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 09/09/2016 | $ 1,903.57 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 09/14/2016 | $ 1,903.57 |
| Barclays Bank PLC | Jeremy L Marcus | CNB-9738 | 09/19/2016 | $ 3,000.00 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 10/11/2016 | $ 21,214.27 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 10/13/2016 | $ 500.00 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 10/18/2016 | $ 16,000.00 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 10/18/2016 | $ 69.77 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 10/28/2016 | $ 17,668.90 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 10/31/2016 | $ 20,670.00 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 11/03/2016 | $ 1,095.00 |
| Barclays Bank PLC | Nantucket Cove of Illinois LLC | Mid 1929 | 11/08/2016 | $ 6,144.56 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 11/14/2016 | $ 16,535.80 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 11/25/2016 | $ 5,960.92 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 12/06/2016 | $ 13,827.88 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 12/13/2016 | $ 8,779.75 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 12/15/2016 | $ 5,960.92 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 12/27/2016 | $ 17,986.58 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 12/30/2016 | $ 629.69 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 01/12/2017 | $ 4,355.93 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 01/19/2017 | $ 26,580.59 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 01/24/2017 | $ 569.50 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 02/13/2017 | $ 24,097.30 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 02/22/2017 | $ 4,511.37 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 02/22/2017 | $ 364.68 |
| Barclays Bank PLC | Nantucket Cove of Illinois LLC | Mid 1929 | 02/27/2017 | $ 3,621.10 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8902 | 03/10/2017 | $ 11,791.11 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 03/13/2017 | $ 7,383.00 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 03/27/2017 | $ 15,762.90 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 04/13/2017 | $ 6,863.00 |
| Barclays Bank PLC | Jeremy L Marcus | CIT-8802 | 04/19/2017 | $ 727.45 |
| | | | **Total** | **$ 353,133.75** |